Good morning, Your Honors. Alisa Solano-Peterson for Appellant Martin Dominguez. This case is in regards to whether leadership organizer enhancement applies to defendant's case, and also whether there should have been an adjustment for an undischarged term of imprisonment that he was serving on a state offense. In regards to the leadership enhancement, it's defendant's position that there is insufficient evidence for this enhancement, and it's not really because the court did not explain itself enough as to why it was imposing this enhancement, but basically, if you look at the record, there is just insufficient evidence for the enhancement. But what about all the evidence in the PSR to which you did not object? Well, the PSR basically goes through the same thing that he admitted to in the plea agreement, which this court previously had said was insufficient, and then there are some conclusory remarks about his being a leader, but there isn't really any. There's facts that are recited in the pre-sentence report that talk about his, for example, Dominguez was believed to be the head of the organization, that he hired one of the other people, he organized things. Right, it's defendant's position that although there are conclusions made in the report, it doesn't really get into any factual basis for it, just saying that he's a leader. Well, in early January 2001, Dominguez asked Hooper to transport 150 kilograms of cocaine, and Dominguez arranged with Hooper to pick up the cocaine. Right, well, basically it shows that he had involvement in this conspiracy, but there needs to be a higher showing to say that he was actually a leader. And they do say he's a leader, but they don't really get into details as to why he's a leader, as opposed to just participating in some transactions. And what the PSR does do, though, is it refers to that New York case. And if there's any argument to be made that he is a leader, it is found in the allegations made in the New York case. It's defendant's position that even that isn't sufficient, because basically they're just making conclusionary remarks about his involvement. But the PSR does refer to the New York case, and it's defendant's other contention that the New York case was considered to be relevant conduct. And even though the New York case wasn't used to calculate the drug quantity in the present case, it was referred to in the PSR, and it's defendant's position that, therefore, it was used for the leadership enhancement. Because if there's any evidence that he's a leader, it would have to be in the New York case. The other instant case is just his involvement in a few transactions. And they talk about this Martin organization and everything else in regards to the New York case. Although it's defendant's position that's still insufficient, because it actually says that the defendant reported to somebody else, another person, and basically this other person was the head of the organization, and defendant and everyone else reported to this other person. That's in the PSR. But at the same time, that was what was relied on to impose this enhancement, and it appears under 5G1.3 when another offense is taken into account to increase the offense level. In the instant case, it doesn't just mean base offense level. It means it would also include adjustments. So it would include the leadership adjustment. And I have no further comments if there's any other questions. If there are no questions, I'd like to reserve the time. Thank you, counsel. Thank you. Good morning. May it please the Court, Kevin Rosenberg on behalf of the United States. This Court should find that the lower court did not clearly err by finding a preponderance of the evidence supported application of the role adjustment based upon the defendant's leadership role. Is it your position that the earlier Ninth Circuit memorandum disposition is no longer binding because of Booker, or is it that there's additional evidence someplace, and if so, what is it? Certainly the decision is binding, Your Honor. Okay. So what's the additional evidence? The additional evidence is the evidence set forth in the pre-sentence report that Judge Wardlaw referred to, and I'll refer to some of the specific factors that are used in the analysis of whether somebody plays an organizer or a leader type of role. And the first thing, a comment I'd like to make also is there's no dispute as to the number of participants here, so the real issue is as to whether the defendant was an organizer or a leader. So can we just clarify? There was more than one pre-sentence report, right? Didn't each time he was sentenced there was another pre-sentence report? No, Your Honor. It was just one? Just one. Just one. Okay. So with respect to, for example, the factor of whether the defendant recruited accomplices or participated in the planning and organizing, in the pre-sentence report it details a telephone conversation on November. I'm not sure about that because I'm reading from the sentencing's transcript. It says I guess we have at least four different PSRs or at least three. We have the original. We have the one in March and the one, the revision in April. So the court has three separate PSRs. I think that was Mr. Hayes saying that. I thought there was only one, Your Honor. If there's more than one, then I'm sorry. I'm just wondering if the PSR changed. You know, there are three sentencing's in this case. I'm just wondering if additional facts were added or was this all along the same pre-sentence report with the same facts upon which Judge Hatter rolled? I thought there was only one, and whether there was one or two or three, I think the fact of the matter is that the one that was available to the court the last time it was facing sentencing in this matter clearly sets forth facts which address the factors. If all that's needed, this same pre-sentence report was before the district court the first time and the second time and before the Ninth Circuit as well, right? I believe so, yes, Your Honor. So your submission is that an earlier panel of this court, when it said there wasn't sufficient evidence in the admissions, was ignoring the pre-sentence report. It just happened. Even though we have law that says the pre-sentence report is assumed to be accepted unless it's subjected to and so on. It seems a little weird that we have to keep doing this over and over again just because no one said, oh, and look at the pre-sentence report. Well, I think the issue the first time, Your Honor, was the fact that at the time the state of the case law did not permit the district court to use any facts that were not admitted to by the defendant in coming up with the appropriate sentence. And that was while the guidelines were still mandatory and binding. So if the defendant didn't admit it or the court didn't find it beyond a reasonable doubt, then the court couldn't consider the facts in the PSR. And now that we're in a post-Booker world and the guidelines are- I thought the PSR was always sort of deemed to be- the facts in the PSR were admissible and assumed to be accepted unless somebody objected to them. I think that's generally true, but when we're brushing up against the case law in the context of drug quantities and drug amounts, we ran into the history where it was a little bit different. And I think that, as this court pointed out in its initial decision, when it remanded the case the first time, that it constituted a constitutional error. We said it was unclear whether the district court was relying exclusively on Dominguez's admissions so it would be permissible under Booker or whether there were additional facts. And the admissions were not sufficient, so it was a Sixth Amendment error. So that's why we sent it back the first time. And then the district court didn't understand what we were doing and thought we had remanded for an amylene resentencing. And so then we had to send it back the second time. That's true, Your Honor. So- Yes. So now what we have, we have evidence that is fully able to be considered by this court and was considered by the district court. So as to the factors such as recruitment of accomplices, you have a telephone call in November of 2000 where co-defendant Dominguez calls another co-defendant Gates and says the defendant wants to know if he'll transport some cocaine. So the defendant is recruiting an accomplice. You have other telephone calls between the defendant, Dominguez, and a co-defendant named Hooper that demonstrate how the defendant was hiring Hooper to transport the cocaine. You have evidence detailed in the pre-sentence report where the defendant is agreeing to pay Hooper to transport cocaine. You have numerous facts in the pre-sentence report. And by the way, none of this comes from the New York case at all. There's nothing in the pre-sentence report in the discussion of role that mentions anything from the New York case, and that's starting at paragraph 66 of the pre-sentence report through paragraph 70. So all of this, all these facts that I'm discussing come from this particular case. As to the control and authority exercised over others and the defendant's decision-making authority, there was evidence that co-defendant Dominguez essentially was running the organization while the defendant was in Mexico. The probation officer characterized Dominguez as the defendant's right-hand man. The defendant was in charge of planning a large 150-kilogram cocaine shipment to the East Coast. The defendant and Dominguez called Hooper to give directions and orders. There's an intercepted call which demonstrates how the defendant, Dominguez and Hooper, excuse me, between defendant Dominguez and Hooper, demonstrating that they hired Hooper. And also significantly, the defendant took charge of getting payment for some lost cocaine. Approximately 8 kilograms were lost, apparently stolen. So all of these facts, and none of this stuff, none of these facts, excuse me, were those that were contained in the plea agreement and those admitted to by the defendant. These were all significantly contained in the pre-sentence report, none of which were objected to here. And these facts all reflect that the defendant was far more than a mere participant, that he was, in fact, an organizer or leader. And so the district court did not clearly err in applying this. Even if the court did err, the government believes that this court can conclude that the error was harmless because the record is clear that the district court carefully considered the guidelines, carefully considered all the aggravating, mitigating evidence. The court made two different statements about what sentence it would have imposed, absent any error that even the court might find exists. The court stated it would have imposed the same sentence, regardless of whether it applied the leadership role adjustment. It went on to say that it would have applied the same sentence with or without the guidelines, in fact, which sets this case apart from the Munoz-Camarena case. Also significant to that point is the fact that the last time the district court actually imposed a lower sentence. The first sentence that was imposed, and actually the second sentence that was imposed, was 272 months. Here, this time, the district court imposed a reduced sentence of 240 months. And again, the record is clear that Judge Hatter considered all of the various factors. And he also reduced that by 20 months, too, afterwards. So his total sentence was 220. I think he reduced the sentence the first time, Your Honor. I think the sentence this time. No, there was a corrected order to correct sentence pursuant to Rule 35. He reduced it at that point to 220. Okay, my mistake. So he further reduced it, even beyond there. So for those reasons, the court should affirm the district court's application of that guideline. With respect to the credit in New York issue, I think a reading of the guideline that was applied in this case simply reflects that it doesn't apply. There's nothing in the pre-sentence report that shows that the New York conduct was used to generate the base offense level here, although it was considered relevant conduct for criminal history points. It was not used to come up with the offense level, and therefore you don't even get to the application note that talks about if it was taken into account or not. Judge Hatter ordered this sentence in this case to run concurrently with the New York sentence. Judge Hatter, again, fairly and thoroughly considered all the facts here and imposed a sentence that he believed was reasonable and appropriate in this particular case. Unless the court has any questions, the government would submit on its argument in brief. I have one question. I'm sorry. The guideline sentence doesn't say base offense level. It says the offense level. So I'm wondering if the New York conduct did go into the leadership enhancement, wouldn't that count? I think it would count, and if the court looks at the pre-sentence report, which Judge Hatter did adopt, there's nothing in that part of the pre-sentence report, which is found starting at paragraph 66, that talks about any conduct from New York. You're saying it didn't, in fact, go into it. Exactly, Your Honor. Yes. Thank you. Thank you, Your Honor. I think if you look at the allegations of this case and then you look at the PSR, you can see that some of these things is way beyond, you know, what's alleged for this offense. I believe it was on paragraph 68. Well, that's true, but can you show us where the particular conduct that was in the New York offense for which he was sentenced was taken into account? Right. Okay. I mean, like, for example, in paragraph 68, he says he's the leader of the Dominguez Drug Organization. That has to be taken from the New York case. That's not anything that's alleged in this case. And, therefore, we're saying that that was relevant conduct. It was taken into account to enhance the leadership enhancement. So, therefore, the adjustment should apply because he wasn't given full credit for the entire time he was in New York custody. And also this order to correct sentence, it's actually ambiguous. It says that it's corrected to be 220 months, but then it also says denied. So I'm not sure what that means. But, anyway, what's important is that he wasn't credited for all the time and he should have been. Nothing else. Thank you. The case is submitted.
judges: Reinhardt, Wardlaw, Berzon